**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JEFFREY KRONK

       Plaintiff

  v

CARROLL COUNTY, MD, et al.

       Defendants

:

:

:             Civil Case No. L-11-0277

:

:

:

o0o

**<u>MEMORANDUM</u>**

Plaintiff, Jeffrey Kronk, brings this action against Defendants Carroll County Sheriff's Department ("Sheriff's Department" or "Department"), Sheriff Kenneth Tregoning in his personal and official capacities (the "Sheriff" or "Tregoning"), and the Carroll County Board of Commissioners ("Carroll County," the "County," or the "Board"). The Complaint charges violations of the Family and Medical Leave Act ("FMLA"), violations of the Americans with Disabilities Act ("ADA"), intentional infliction of emotional distress, violations of the Carroll County Code, trespass to chattels, and conversion.

Now pending are: (a) the Sheriff and the Sheriff's Department's joint Motion to Dismiss (Docket No. 5) and (b) Carroll County's Motion to Dismiss or, in the alternative, for Summary Judgment. (Docket No. 11). The issues have been comprehensively briefed and no hearing is deemed necessary. <u>See</u> Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, the Court will GRANT IN PART and DENY IN PART the Sheriff's and Sheriff's Department's Motion to Dismiss, and GRANT the County's Motion for Summary Judgment.

## I.      BACKGROUND

From 1998 until 2006, Kronk was employed as a correctional officer at the Carroll County Detention Center in Westminster, Maryland.  The Detention Center is a Carroll County facility.  The County finances the Detention Center's operations and administers employee benefits and compensation.  Day-to-day management of the facility, however, is the responsibility of Sheriff Tregoning, a state constitutional officer.

At some point during his tenure at the Detention Center, Kronk began experiencing migraine headaches, which caused him to miss work.  On June 3, 2004, he was scheduled to work the midnight shift, but he objected because the shift would disrupt his sleep schedule and exacerbate his condition.  In a course of correspondence between Kronk's physician and the Carroll County Human Resources Department, Kronk's physician documented Kronk's disability, confirmed his ability to perform the essential functions of his employment, and qualified him for protection under the ADA.  Kronk was required to, and did, obtain a second opinion from a designated physician, who corroborated this diagnosis.  Accordingly, the County and the Sheriff recognized his disability, and Kronk was not required to work the midnight shift again.

Sometime that same month,[1] the Sheriff's Office issued a directive stating that Kronk had a high usage of sick leave and placing him on "special sick leave status."  Under "special sick leave status," Kronk would be required to obtain a physician's certification for each day of sick leave before returning to work.  According to Kronk, no other employee of the Detention Center had been subjected to such procedures.  Nevertheless, he acted in accordance with the order and obtained a physician's approval for all health-related absences.  On June 25, 2004, the Carroll County Department of Human Resources approved Kronk's request for FMLA leave and

---

[1]        The record does not establish the timeline of events with clarity.

informed the Detention Center that he would be eligible for intermittent leave under the FMLA's "self-care" provision.  See Docket No. 17-5.

On August 25, 2006, the Sheriff's Office issued Personnel Order #06-45, which required Kronk to make each request for leave in person.  According to Kronk, all other employees of the Detention Center were permitted to request leave by voice mail.  The order also directed Kronk to "maintain[] a two week leave balance in any combination of annual and sick leave" before requesting non-FMLA leave.  Docket No. 17-15.

Kronk filed grievances concerning these policies, but the Sheriff denied his claim of unfair treatment.  When Kronk attempted to file complaints with the County, he was turned away and informed that he was an employee of the Sheriff, not an employee of the County.

In December of 2006, Kronk filed a complaint with the EEOC through the Maryland Commission on Human Relations, alleging that he had been "subjected to unequal terms and conditions of employment and harassment due to [his] disability and in retaliation for participating in a protected activity."  Docket No. 17-1.  The charge identified the Sheriff's Department as Kronk's employer.  The EEOC commenced an investigation and began conciliation with the Sheriff's Department.  The County was not named, and neither received notice of the charge nor participated in the conciliation process.  In 2007, the Sheriff agreed that Kronk's attendance record had improved and took him off "special sick leave status."

In 2008, however, the Sheriff began denying Kronk's leave requests and instructed him to schedule his medical appointments during off-duty hours.  According to Kronk, no other employee of the Detention Center was ever denied leave.  Then, in June of 2008, the Sheriff instituted a personnel policy that made pay raises and cost of living adjustments contingent on a satisfactory attendance record.

3

On April 16, 2009, Kronk telephoned a shift supervisor to notify him that he would be unable to work the following morning because of his disability and that his medication would prevent him from answering the phone.  The next morning, Captain Green telephoned Kronk but received no answer.  He left a voicemail informing Kronk that he had exhausted his FMLA leave[2] and ordering him to report for duty immediately.  When Kronk did not report for his shift, his employment was terminated for insubordination.

Kronk appealed the termination to his supervisors in the Sheriff's Office, and a hearing was convened on May 5, 2009.  After taking testimony and reviewing Kronk's employment records, Sheriff's Office supervisors determined that Kronk had been sufficiently informed of his FMLA leave balance, that Captain Green's order to report for duty was consistent with Detention Center policy, and that Kronk's dismissal was not excessive.  Accordingly, Major Kasten, on behalf of the Sheriff's Department, denied Kronk's appeal and declined to overturn his dismissal.

One June 30, 2009, the EEOC concluded its investigation and attempted mediation, but the Sheriff's Office maintained that it had acted in accordance with the law.  On November 5, 2010, the EEOC issued Kronk a right-to-sue letter, and on February 1, 2011, Kronk filed suit in this Court.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of his claim.  See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1965.  The court must, however, "assume the veracity [of well-pleaded factual allegations] and

---

[2]        Kronk does not dispute that he had exhausted his FMLA leave.

then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

## III.    ANALYSIS

Kronk brings suit against both Sheriff Tregoning and Carroll County for violations of the FMLA, violations of the ADA, intentional infliction of emotional distress, violations of the Carroll County Code, trespass to chattels, and conversion. Though the case is factually straightforward, the muddled relationship between the Sheriff and the County, as well as the intricacies of FMLA and ADA law, make this analysis a tortuous trip down the rabbit hole.[3]

---

[3]     The law should be reasonably clear and understandable by the citizenry. Lawmakers would do well to simplify the patchwork of conflicting and interlocking laws, doctrines, and exceptions that bedevil this area of employment law.

In order to address the issues raised by Kronk's Complaint in an orderly fashion, the Court will consider the viability of his claims against each named defendant <u>seriatim</u>.  For the reasons stated herein, the only claims that Kronk may validly pursue in this Court are those against Sheriff Tregoning in his official capacity for violations of the ADA and the FMLA, and then only insofar as Kronk seeks reinstatement to his prior position.

### a.  Claims Against the Carroll County Board of Commissioners

### i.  Carroll County is Not the Proper Defendant

Kronk alleges that the Carroll County Board of Commissioners, along with the Sheriff, discriminated against him in violation of the FMLA, the ADA, and Maryland common law when they required him to adhere to different, more restrictive leave policies than those imposed on other employees of the Detention Center.  He further alleges that the County retaliated against him for using FMLA leave and for filing complaints against his employer by, <u>inter alia</u>, terminating his employment with the Detention Center.  The Carroll County Board of Commissioners argues that all claims against the County should be dismissed because Kronk is employed by the State, and not by the County.

The Court need not decide whether the County may properly be considered Kronk's "employer" as that term is defined in the ADA or the FMLA.[4]  Rather, the Court concludes that,

---

[4]      For unexplained reasons, which serve only to add to the needless complexity of this area of the law, the ADA and the FMLA define "employer" differently.  In ADA cases, as in Title VII cases, the existence of an employer-employee relationship is a question of federal law that is resolved by reference to the general common law of agency.  <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 755 (1998).

Under the FMLA, however, the term "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  This definition expressly incorporates the definition of "person" contained in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219.  <u>See</u> 29 U.S.C. § 2611(8).  For that reason, courts have looked to interpretations of the FLSA as persuasive in FMLA cases.  <u>See, e.g.</u>, <u>Hukill v. Auto Care, Inc.</u>, 192 F.3d 437 (4th Cir. 1999).  In contrast with its treatment under the ADA, "[t]he definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."  <u>Bonnette v. Cal. Health and Welfare Agency</u>, 704 F.2d 1465, 1469 (9th Cir. 1983), abrogated on other grounds by <u>Garcia v. San Antonio Metro. Transit Auth.</u>, 469 U.S. 528 (1985).  In fact, according to Department of Labor regulations concerning the FLSA, an individual may be the employee of more than one employer at any given time.  29 CFR § 791.2; <u>see also</u> <u>Schultz v.</u>

even if the County is Kronk's employer for some purposes, it is nevertheless the improper

defendant in this case because each of the allegedly discriminatory or retaliatory actions cited in

Kronk's Complaint was taken by the Sheriff or his personnel, rather than by the County.

Kronk alleges that the County discriminated against him by requiring him to make all

requests for leave in person, a policy that was not imposed on other Detention Center employees.

The record reveals, however, that the directive in question was issued by the Sheriff's Office, not

by the County.  See Docket No. 17-4 at 2.  Next, Kronk alleges that the County attempted to

discourage him from using his leave by requiring him to first "bank eighty hours" of non-FMLA

leave.  Compl. ¶ 45, Docket No. 1.  In fact, it was the Sheriff's office that "retain[ed] the right to

approve or disapprove any non-FMLA leave request."  Docket No. 17-4 at 2.  Moreover, each of

Kronk's grievances concerning these directives was handled and ultimately dismissed by the

Sheriff's Office.  Id.  Finally, the Sheriff's Office issued the order terminating Kronk's

employment, handled his disciplinary hearing, and denied his appeal.  See Docket No. 17-3.

The Court notes that the County did maintain a degree of involvement in these events.  In

a letter written on behalf of the Sheriff, Major Commander Reynolds states that the Sheriff's

Office consulted with the County and that two of the directives in question "were prepared with

the concurrence of the Carroll County Department of Human Resources and the Carroll County

Attorney."  Docket No. 17-4 at 3.  One of the letters, in fact, was even drafted by the County

before being signed by the Sheriff.  Id.  Given the obvious complexity of FMLA regulations, it is

understandable that the Sheriff's Department would consult with the County, and that the County

would advise it.  Despite the County's involvement, the record demonstrates that the Sheriff was

---

Capital Int'l Sec. Inc., 466 F.3d 298, 305 (4th Cir. 2006).  If the facts establish that an individual is simultaneously
employed by multiple employers, "all joint employers are responsible, both individually and jointly, for compliance
with all of the applicable provisions of the act."  29 C.F.R. § 791.2(a).

the final authority on all of the relevant decisions.  Granting advice and guidance does not render the County responsible for his actions.

Kronk does not allege that the Carroll County Human Resources Department denied his substantive entitlements under the FMLA.  Nor does he claim that the County failed to recognize his disability.  In fact, he notes that the County approved his request for FMLA leave.  Instead, he claims to be the subject of certain discriminatory and retaliatory actions, each of which was carried out by the Sheriff or Sheriff's Office personnel.  Because none of the allegedly wrongful actions was carried out by the County, the Carroll County Board of Commissioners is entitled to dismissal.

### ii. Failure to Exhaust Administrative Remedies and Notice Requirements

Even if the County were the proper Defendant, Kronk's ADA and FMLA claims would fail because the County was neither named in nor informed of Kronk's EEOC charge.  The County, therefore, was excluded from the administrative proceedings that serve as a necessary precondition to a federal lawsuit.  Rather, Kronk correctly named the Sheriff's Department as his employer, and the Sheriff's Department was the focus of the EEOC's investigation and conciliation efforts.

Civil actions under Title VII and the ADA may only be brought against a party who was "named in the [EEOC] charge."  42 U.S.C. § 2000e-5(f)(1); Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll., 848 F.2d 457, 458–59 (4th Cir. 1988).  This naming requirement serves two purposes: it notifies the charged party of the asserted violation and provides an opportunity for conciliation.  Id.  This requirement is not applied in a hyper-technical fashion, however.  It will be excused when the complainant names an entity that is functionally identical to the legal entity against which suit would eventually be filed, or when the purposes of the

8

requirement are substantially met.  Id. at 460–61; Vanguard Justice Soc. Inc. v. Hughes, 471 F.

Supp. 670, 687 (D. Md. 1979).

Kronk's argument that "Defendant Carroll County is identical to Defendant Carroll

County Sheriff's Department and Defendant Sheriff Tregoning for purposes of being placed on

notice of Plaintiff's claims in his Complaint" is unavailing.  Pl.'s Resp. 8, Docket No. 17.  The

Sheriff's Department is not a branch or department of Carroll County.  Rather, the Sheriff is an

independently elected state constitutional officer.  See Md. Const., art. IV, § 44; see also Rucker

v. Harford Cnty., 558 A. 2d 399 (Md. 1989).  Cf. Alvarado, 848 F.2d at 460 (naming requirement

satisfied when charge named college instead of board of trustees because the two entities were

essentially identical); Efird v. Riley, 342 F. Supp. 2d 413 (M.D.N.C. 2004) (naming requirement

satisfied when sheriff's department was named as respondent in the EEOC charge and plaintiff

subsequently sued the sheriff).  Moreover, the EEOC's only contact was with the Sheriff's

Department.  An affidavit filed by Timothy Burke, Acting County Attorney, states that the Board

of County Commissioners neither received the EEOC charge nor was invited to participate in the

voluntary conciliation process.  See Docket 11-3 at ¶¶ 4–5.[5]

Likewise, Kronk's state law claims would be barred by his failure to comply with the

notice requirement of the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts.

& Jud. Proc., §5-304(b), which states that "an action for unliquidated damages may not be

brought against a local government or its employees unless the notice of the claim required by

this section is given within 180 days after the injury."  Providing notice of a claim under the

LGTCA is a condition precedent to the right to maintain an action for damages against a

municipality and its employees.  Halloran v. Montgomery Cnty. Dept. of Pub. Works, 185 Md.

---

[5]       Kronk's assertion that he "recalls the EEOC investigator stating to him that a copy of the initial charge was
sent to The Sheriff's office as well as to Carroll County" does not establish otherwise.  See Pl.'s Opp. 8, Docket No.
17.

App. 171, 182 (2009).  Section 5-304(d) of the LGTCA provides for waiver of the notice

requirement when the plaintiff can show good cause for not complying with the statute, unless

the defendant can affirmatively show that its defense has been prejudiced by the lack of required

notice.

 Kronk concedes that he "did not send Defendant Carroll County notice of his claims prior

to the filing of his Complaint."  Pl's. Opp. 25, Docket No. 17.  Neither his Complaint nor his

subsequent pleadings have offered any explanation for his failure to do so.  Kronk's only

argument appears to be the unexplained misassumption that he "would have had 180 days from

the completion of the EEOC's investigation" to provide the County with formal notice.  Id.  He

fails to provide any support for this contention, which, in any event, is foreclosed by the text of

the LGTCA itself.

 **b.  Claims Against the Sheriff's Department**

 Kronk's action must also be dismissed as to the "Carroll County Sheriff's Department,"

because the Sheriff's Department is not a distinct legal entity capable of being sued.  Capacity to

sue or be sued is determined in accordance with the laws of the state under which the entity is

organized.  Fed. R. Civ. P. 17(b).  In Maryland, it is well established that the office of a county

sheriff is not an agency susceptible of being sued.  See Boyer v. State, 323 Md. 558, 572 n. 9

(1991) (dismissing claims against the Charles County "Sheriff's Department" because "[n]either

the Constitution nor any other provision of law of which we are aware creates a governmental

agency known as the 'Sheriff's Department' ").  Accordingly, Kronk's suit will be dismissed as

against the "Carroll County Sheriff's Department."

 **c.  Claims Against Sheriff Tregoning in His Official Capacity**

Kronk files suit against Sheriff Tregoning first in his official capacity as Carroll County Sheriff.  The Sheriff argues that, to the extent he is sued in his official capacity, his status as a state constitutional officer entitles him to Eleventh Amendment immunity from suit in federal court.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, of by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens.  See Edelman v. Jordan, 415 U.S. 651, 662–63 (1974).  This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state.  Cash v. Granville Cnty. Bd. of Ed., 242 F.3d 219, 222 (4th Cir. 2001).  The Eleventh Amendment does not, however, protect local governments such as counties and municipalities.  Id.  Given the structural complexity of state and local governments, it is sometimes difficult to tell whether an agency is "properly characterized as an arm of the state, or of the local government."  Harter v. Vernon, 101 F.3d 334, 337 (4th Cir. 1996).

Kronk urges that Tregoning is not a State employee in his role as director of the Detention Center, but rather a county employee subject to federal jurisdiction.  Maryland courts, however, have regularly held that county sheriffs and their deputies are State agents for the purposes of tort liability.  See Rucker v. Harford Cnty., 316 Md. 275 (1989).[6]  This Court has

---

[6]    For this reason, when sheriffs and their deputies are sued, the State must bear the cost of defense.  To allay the unwelcome financial burden imposed by Rucker, the Maryland legislature passed a law requiring counties either to carry insurance to cover claims against sheriffs or to reimburse the State for the costs of paying and defending against tort suits.  See 1990 Md. Laws ch. 508.  In this way, the burden is shifted back to the counties.  Rucker, however, is still good law, and its holding has been reaffirmed in a long line of cases.  See, e.g., Prince George's Cnty. v. Aluisi, 354 Md. 422, 434 (1999); Penhollow v. Bd. of Com'rs for Cecil Cnty, 695 A.2d 1268, 1282 (Md. Ct. Spec. App. 1997).

likewise repeatedly held that county sheriffs in Maryland are State actors shielded by the State's Eleventh Amendment immunity.  See, e.g., Rossignol v. Voorhaar, 321 F. Supp. 2d 642, 651 (D. Md. 2004); Hayat v. Fairely, No. 08-3029, 2009 WL 2426011, *10 (D. Md. Aug. 5, 2009); McGrath-Malott v. Maryland, No. 06-879, 2007 WL 609909, at *4 (D. Md. Feb. 23, 2007).

Kronk seeks to distinguish these cases, which primarily concern county sheriffs acting in their law enforcement capacities rather than as managers of correctional facilities.  Relying on Dotson v. Chester, 937 F.2d 920 (4th Cir. 1991), he argues that the Sheriff should not be entitled to Eleventh Amendment immunity when acting as director of the County Detention Center.  In Dotson, former inmates of the Dorchester County jail attempted to execute a judgment against the sheriff after having reached a settlement in a § 1983 suit brought against the county for unconstitutional jail conditions.  The Fourth Circuit held that the Sheriff possessed "final policymaking authority" for the county in his role as director of the county jail and could, therefore, be held liable.  Id. at 934.  In this narrow circumstance, the sheriff is, in effect, deemed a county actor rather than a State actor.

The exception recognized in Dotson does not, however, swallow up the rule by making a county sheriff a county official for all decisions he makes while managing a county jail.  In a recent decision by Judge Hollander, this Court examined Dotson's applicability to suits brought under the ADA and the Rehabilitation Act.  See Paulone v. City of Frederick, 787 F. Supp. 2d. 360 (D. Md. 2011).  The essential point of Paulone is that, in suits brought under the ADA and Rehabilitation Act, a county cannot be liable under respondeat superior for actions taken by a state official.  Concluding that the county sheriff was an agent of the State of Maryland even in his role as director of the county detention center, Judge Hollander distinguished Dotson:

> While Dotson suggests that, in some circumstances, a Maryland sheriff's operation of a county detention center may give rise to

county liability under § 1983, <u>Dotson</u> is distinguishable from this case in several important respects.  First <u>Dotson</u> did not concern identification of the proper nominal defendant in a claim based on county detention center management. . . .

Second, and perhaps more important, <u>Dotson</u> was a § 1983 case, while this case arises under the ADA and the Rehabilitation Act. There is no <u>respondeat superior</u> liability under § 1983.  A local government entity can only be liable under § 1983 for a violation of federal rights by its employees or agents if the violation arises from a policy of the entity.  Therefore, the task of the appellate court in Dotson was to determine whether, under the Supreme Court's <u>Monell</u> doctrine, the county has vested with the sheriff the final policymaking authority regarding the county jail.

In contrast, public entities are liable under principles of <u>respondeat superior</u> for their employees' violations of the ADA and the Rehabilitation Act.  The Maryland Court of Appeals has made clear that sheriffs and their deputies are employees of the State, and that counties and municipalities in Maryland are generally not liable under the doctrine of <u>respondeat superior</u> for the tortious acts of State officials or State employees acting in the scope of their employment.

<u>Id.</u> at 377 (citations omitted).  Judge Hollander's analysis applies equally to FMLA claims against a supervisor in his official capacity, and it obtains in the case <u>sub judice</u>.[7]  Sheriff Tregoning is a State official entitled to Eleventh Amendment immunity.

Kronk protests that, even if the Sheriff is a State actor, Congress abrogated state sovereign immunity with regard to the FMLA.[8]  A review of our recent decisions, however, reveals that this Court has already ruled on that issue as well.  In <u>Coleman v. Md. Court of Appeals</u>, No. L-08-2464, 2009 WL 8400940 (D. Md. May 7, 2009), this Court held that

---

[7]     There is a wrinkle in how this logic applies to suits under the FMLA, but it does not disturb this Court's conclusion.  It may not, in fact, be the case that public entities are liable under a theory of <u>respondeat superior</u> in cases arising under the FMLA, because the FMLA, as interpreted in our case law, does not incorporate common law agency principles in the same way as the ADA.  <u>See</u> n. 10, <u>infra</u>.  Nevertheless, when a plaintiff brings suit against a supervisor in his official capacity, he is necessarily bringing suit against the entity of which the supervisor is an agent.  Because the Sheriff is an agent of the State, and not of the County, the State would be liable in FMLA suits brought against the Sheriff in his official capacity.

[8]     Kronk also argues that the State of Maryland waived its Eleventh Amendment immunity wholesale by accepting federal funds.  It is unclear what authority, if any, he relies on in support of this far-reaching proposition. In any event, the argument does not merit consideration.

Congress did not validly abrogate state sovereign immunity in enacting the "self-care" provision of the FMLA.[9]  That decision was affirmed by the Fourth Circuit, and it is controlling in the case at bar.  Coleman v. Md. Court of Appeals, 626 F.3d 187 (4th Cir. 2010).[10]

Finally, Kronk asserts that, even if the Sheriff is entitled to Eleventh Amendment immunity, this Court may assert jurisdiction pursuant to Ex parte Young, 209 U.S. 123 (1908). Here, the Court agrees.  In Young, the Supreme Court held that the Eleventh Amendment does not shield state officials from suit for continuing violations of federal law.  In such cases, however, the court's remedial power is limited to prospective injunctive relief and may not include retroactive awards for benefits denied or damages incurred.  Edelman v. Jordan, 415 U.S. 651, 677 (1974).  Reinstatement is, by its nature, a prospective remedy.  If an employee has been discharged in violation of federal law, a federal court may order the state to rehire him.  See Coakley v. Welch, 877 F.2d 304, 306–07 (4th Cir. 1989).

Courts have specifically recognized that a plaintiff may seek reinstatement under the doctrine of Ex Parte Young in cases alleging violations of the ADA and the self-care provisions of the FMLA.  See, e.g., Stewart v. Moccasin Bend Mental Hosp., Nos. 1:07-cv-305, 1:08-cv-255, 2009 WL 2244621 at *4–5 (E.D. Tenn. July 24, 2009).  Insofar as Kronk seeks reinstatement only, his claim against Sheriff Tregoning falls within the Ex parte Young exception to Eleventh Amendment immunity.  Accordingly, Tregoning's Motion will be granted

---

[9]     While Kronk does not specify precisely which provision of the FMLA he intends to invoke, it is clear from his Complaint that the suit was intended to proceed under the so-called "self-care" provision, which entitles qualified employees to take up to twelve weeks of unpaid leave annually when "a serious health condition . . . makes the employee unable to perform the functions of [his] position."  29 U.S.C. § 2612(a)(1)(D).

[10]     The decision of the Fourth Circuit Court of Appeals affirming this Court's ruling has also been appealed, and the Supreme Court recently granted certiorari. Coleman v. Court of Appeals of Md., 131 S. Ct. 3059 (June 27, 2011) (NO. 10-1016).  Because other Circuits addressing the issue have reached similar conclusions, the Court sees no reason to postpone ruling on this case pending the Supreme Court's decision.  See Nelson v. Univ. of Texas, 535 F.3d 318, 321 (5th Cir. 2008); Miles v. Bellfontaine Habilitation Ctr., 481 F.3d 1106, 1107 (8th Cir. 2007); Toeller v. Wisconsin Dep't of Corr., 461 F.3d 871, 879 (7th Cir. 2006); Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities, 422 F.3d 392, 402 (6th Cir. 2005); Brockman v. Wyoming Dep't of Family Servs., 342 F.3d 1159, 1164-65 (10th Cir. 2003).

as to Kronk's claims for damages under the ADA and FMLA, but denied as to Kronk's request for reinstatement.

### d.   Claims Against Sheriff Tregoning in His Personal Capacity

Kronk's Complaint also names Sheriff Tregoning as a defendant in his personal capacity. Tregoning moves to dismiss on the grounds that neither the ADA nor the FMLA authorizes suit against individuals, and that state officials sued as individuals enjoy official immunity for torts committed within the scope of their official duties.

### i.   ADA and FMLA

It is settled law in this Circuit that the ADA does not authorize a remedy against an employer in his individual capacity.  Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999). Whether the FMLA allows for suits against an employer or supervisor in his personal capacity is currently a subject of some debate in the Fourth Circuit.  See Jones v. Sternheimer, 387 Fed. Appx. 366, 368–69 (4th Cir. 2010).  This Court, however, has previously ruled on the issue, holding that the FMLA does not impose liability on individuals in their individual capacities. Sadowski v. U.S. Postal Serv., 643 F. Supp. 2d 749, 756 (D. Md. 2009).  There is no reason to revisit that ruling today.  Accordingly, Kronk's claim against Sheriff Tregoning in his personal capacity for violations of the FMLA and the ADA must be dismissed.

### i.   State Law Tort Claims

In Maryland, official immunity protects State personnel from suit and liability for tortious conduct committed within the scope of their public duties unless the plaintiff can allege malice or gross negligence.  See Md. Code Ann., Cts. & Jud. Proc. § 5–522(b).  This protection includes immunity from suit for intentional torts.  See Lee v. Cline, 863 A.2d 297, 310 (Md. 2004).

County sheriffs are explicitly included within the law's definition of State personnel.  Md. Code. Ann., State Gov't § 12-101(a)(6).

Under Maryland law, malice is defined by reference to "actual malice," described as "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff."  Shoemaker v. Smith, 353 Md. 143, 163 (1999) (quoting Leese v. Baltimore Cnty., 64 Md. App. 442, 480 (1985)). Plaintiffs asserting malice are held to a high pleading standard that may not be satisfied by conclusory allegations.  See Elliott v. Kupferman, 58 Md. App. 510, 528 (1984) ("Merely asserting that an act was done maliciously, or without just cause, or illegally, or for improper motive does not suffice.  To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious.").

"A similarly high threshold must be crossed to establish gross negligence—the defendant must have 'acted with wanton or reckless disregard for the safety of others.' "  Id. (quoting Boyer v. State, 594 A.2d 121, 132 (Md. 1991)).

Kronk has not alleged, and nor do the facts of the Complaint suggest, that Sheriff Tregoning acted outside of the scope of his official duties.  In each count of the Complaint Kronk does allege, in boilerplate fashion, that "Sheriff undertook the actions alleged herein with malice or with reckless indifference to Plaintiff's rights . . . ."  Under the standard articulated above, however, this sort of conclusory recitation is insufficient.  Moreover, nothing in Kronk's factual allegations so much as hints at the kind of "evil or rancorous motive" that would be required for him to defeat Tregoning's immunity.[11]

---

[11]    The one claim that, by its terms, would be insusceptible to a defense of official immunity is Count IV, which charges Tregoning with intentional infliction of emotional distress.  It is clear, however, that Kronk has alleged no facts that would constitute the type of "opprobrious behavior . . . so outrageous in character, and so

Though, as discussed above, the State is generally immune from suit, the Maryland Tort Claims Act ("MTCA") waives the State's sovereign immunity under certain conditions.  In doing so, it substitutes liability on the part of the State for liability that otherwise would exist on the part of State employees and officials covered by official immunity.  The MTCA does not, however, waive Maryland's sovereign immunity in federal court.  Weller v. Dept. of Social Servs., 901 F.2d 387, 397 (4th Cir. 1990).  If Kronk wishes to pursue these tort claims against the State, he must do so in state court.  Counts IV through VIII will be dismissed without prejudice.


### C.  CONCLUSION

For the foregoing reasons, the Court will, by separate Order of even date, GRANT IN PART and DENY IN PART the Sheriff's and Sheriff's Department's Motion to Dismiss, and GRANT the County's Motion to Dismiss.  The Court will enter a Scheduling Order to govern the course of discovery.


Dated this 25th day of January, 2012


/s/
_____
Benson Everett Legg
United States District Judge

---

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby, 607 A.2d 8 (Md. 1992).